IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00342

Carlos Cuesta, an individual, &
Access 4 All, Inc., a Florida Not-for-Profit Corporation

       Plaintiffs,

  vs.

Denver TC Hotel LLC, a Delaware Limited Liability Company

       Defendant.

_____/

## COMPLAINT

### Introduction

Plaintiffs, Carlos Cuesta, an individual, and Access 4 All, Inc., a Florida Not-for-Profit Corporation, ("Plaintiffs" or "Plaintiffs") on their behalf and on behalf of all other mobility impaired individuals similarly situated hereby sues the Defendant, Denver TC Hotel LLC, a Delaware Limited Liability Company ("Defendant") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA").

### The Parties

1. Individual plaintiff, Carlos Cuesta, is an individual over eighteen years of age and is otherwise sui juris.

2. Plaintiff organization, Access 4 All, Inc., is a Florida Not-for-Profit Corporation with a mission of ensuring enjoyment and equal access for disabled persons in all places of public accommodation. This entity was formed under the laws of the State of Florida and remains in good

standing.

3. Defendant, Denver TC Hotel LLC, a Delaware Limited Liability Company, owns or operates a place of public accommodation, in this instance a hotel, alleged by the Plaintiffs to be operating in violation of Title III of the ADA.

## Jurisdiction and Venue

4. Defendant's property, known as the Towneplace Suites Denver - Tech Center, ("Towneplace"), is a hotel located at 7877 S. Chester Street, Englewood, Colorado 80112, in the County of Arapahoe (the "Property").

5. Venue is properly located in the District of Colorado because venue lies in the judicial district of the property situs. The Defendant's property is located in and does business within this judicial district.

6. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

7. The Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA.[2]

8. Plaintiff, Carlos Cuesta, is an individual with disabilities as defined by and pursuant to the ADA. Mr. Cuesta has cerebral palsy (a motor disability which affects a person's ability to move and maintain balance[3]) and therefore has a physical impairment that substantially limits many of

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[2] 28 CFR § 36.201(a) and 28 CFR § 36.104
[3] https://www.cdc.gov/ncbddd/cp/index.html

his major life activities[4] including, but not limited to, not being able to walk or stand for anything more than very short periods of time. Due to his disease Mr. Cuesta suffers from hemiparesis (partial paralysis to the left side of his body) and his mobility is limited; thus, he requires the use of either his cane, his wheelchair, or his scooter to ambulate.

9. Mr. Cuesta is a member of the Plaintiff organization, Access 4 All, Inc.

10. Plaintiff organization, Access 4 All, Inc., is comprised of individuals with disabilities, as defined by the ADA. The primary purpose of this organization is to represent the interest of its members by ensuring that they are not discriminated against at places of public accommodation.

## Factual Background

11. Mr. Cuesta is an ADA advocate and a champion for disabled rights. Since becoming aware of his rights, and their constant infringement, he has dedicated his life to ensuring that he, and others like him, have full and equal enjoyment of public accommodations.

12. Mr. Cuesta encounters architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, ramps, and door handles are taken for granted by the non-disabled but, when implemented improperly, become arduous and dangerous for himself and other wheelchair users.

13. The barriers to access that Mr. Cuesta experiences at differing places of public accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, and non-accessible guestrooms (even when designated "accessible" or "handicapped"). He has become frustrated and disheartened by the repetitiveness of the complaints he has been forced to make to the employees and management at various

---

[4] as defined by 28 CFR § 36.105(b)(1-2)

establishments in the past, often to no avail. Thus, he now finds his redress through the ADA, just as Congress intended.

14. Mr. Cuesta has visited Towneplace on multiple occasions, his last visit occurring on or about September 11, 2022. Mr. Cuesta stayed at Towneplace as an overnight guest and bone fide purchaser in order to avail himself of the goods and services offered to the public within but found that the Property was littered with violations of the ADA - both in architecture and in policy. Mr Cuesta was a guest in Room 118.

15. Although a Florida resident, Mr. Cuesta travels to Colorado regularly, both for pleasure and for business pertaining to Access 4 All, Inc. The members of Access 4 All, Inc. are spread across the United States and have found that Colorado is a desirous place to meet; both due to its geographic location and the breadth of activity that it offers.

16. Mr. Cuesta has a reservation to return to Towneplace on May 5, 2023; he also intends to return on or about August 25, 2023, during a subsequent trip to the Denver area. He intends to revisit Towneplace not only as an overnight guest but also to monitor any progress made with to respect to ADA compliance - he sincerely hopes that his return is not made in vain.

17. Mr. Cuesta has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at Towneplace.

18. The ADA has been law for over thirty (30) years and the Property remains non-compliant. Thus, the Plaintiffs have actual notice and reasonable grounds to believe that they will continue to be subjected to discrimination by the Defendant.

19. Thus, Plaintiffs have a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers he has personally experienced which are listed in paragraph

23 of this complaint.

20. Following any resolution of this matter Plaintiffs will ensure that the Property undertakes the remedial work that is required under the appropriate standard and is compliant with the ADA. This reinspection will occur as set forth in the parties' settlement agreement or as ordered by this Court.

**COUNT I**

**Violation of Title III of the
Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.**

21. Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

22. The Defendant has discriminated against the Plaintiffs, and all other similarly situated disabled persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

23. A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiffs' expert, further revealed that the remediation of all violations/barriers listed in paragraph 24 are both technically feasible and readily achievable.

24. The following are architectural barriers and violations of the ADA that Mr. Cuesta has personally encountered during his last stay at the Towneplace:

**Accessible Parking Areas, Exterior Accessible Routes, and Entrance Access**

    a. The designated accessible parking spaces throughout the Property, are not located on a compliant routes/the nearest most direct accessible routes to the building; violations of ADAAG Section 4.6 and Section 502 of the 2010 ADA Standards. Mr. Cuesta could not unload

freely and safely from vehicles in these parking areas, nor could he safely access the building due to the lack of accessible routes. He was forced to travel around obstacles and through the traffic areas of the parking lot in order to reach the building. The remediation of these barriers is both technically feasible and readily achievable.

**b.** The designated accessible parking spaces at the Property lack compliant access aisles and direct routes from the parking area to the facility entrance; in violation of the ADAAG and Sections 402, 406, and 502 of the 2010 ADA Standards. Mr. Cuesta was endangered by sloping/cross-sloping and a lack of adequate maneuvering clearance within the access aisles and the parking spaces (caused by the above obstacles) while the lack of a direct route from the parking areas which forced him to travel around obstacles and through the traffic area of the parking lot in order to reach the lobby/facility entrances. The remediation of these barriers is both technically feasible and readily achievable.

**c.** Towneplace fails to provide the requisite number of compliant accessible parking spaces and van-accessible parking spaces, a violation of Section 502 of the 2010 ADA Standards. Mr. Cuesta was forced to park away from the hotel so that he could freely access his vehicle without the fear of becoming blocked out by other vehicles; he then had to travel through the traffic area of the parking lot to reach the building. The remediation of these barriers is both technically feasible and readily achievable.

**d.** There is no compliant accessible route from the transit, sidewalk, and/or parking areas at the Property; a violation of Sections 4.1.2 and 4.3 of the ADAAG and Sections 402, 403, 405 and 406 of the 2010 ADA Standards. Due to the lack of an accessible route Mr. Cuesta could not access Towneplace from these areas which limited his options for transportation and access. The remediation of these barriers is both technically feasible and readily achievable.

**e.** The Property does not contain the proper signage required for the identification of accessible parking; a violation of ADAAG Section 4.6 and Section 502 of the 2010 ADA Standards. Due to the lack of proper signage Mr. Cuesta could not easily identify the accessible parking areas. The remediation of this barrier is both technically feasible and readily achievable.

**f.** Travel upon the exterior accessible routes throughout the Property is impeded by excessive sloping/cross-sloping, ramps that lack adequate level landing areas, curb ramps that contain excessive sloping, and gaps in the path of travel; all violations of the ADAAG and Sections 404 and 405 of the 2010 ADA Standards.  Mr. Cuesta was endangered by these obstacles (which present tipping hazards and could cause damage to his wheelchair). Thus, he was forced to travel around them (or through them) while using the exterior accessible route which leads from the parking areas to the lobby/facility entrances. The remediation of these barriers is both technically feasible and readily achievable.

**Access to Goods and Services**

**g.** Towneplace fails to make reasonable accommodations in policies, practices, and procedures to provide for the full and equal enjoyment of disabled individuals nor does it maintain the elements which are required to be accessible and usable by persons with disabilities as required by 28 CFR § 36.211. For example, a failure to remove debris and stored goods on counter tops and a failure to maintain maneuvering and approach clearance to accessible elements and paths of travel. These failures in policy prevented Mr. Cuesta from freely traveling about the hotel and using the accessible elements; which include but are not limited to telephones, desks, tables, and other elements which are required to be accessible – at all times. This failure in policy is easily correctable and must be monitored into the future,

as this type of discriminatory practice is recurring and continuing.

**h.** Mr. Cuesta could not access hotel amenities (workspaces, coffee stations, etc.) nor could he access food counters or dining tables. These hotel amenities/features are mounted beyond his reach, counter heights are mounted beyond the allowable limits, and the dining tables provided are not wheelchair accessible (as they lack the requisite knee and toe clearance); a violation of the ADAAG and Sections 306, 308, and 902 of the 2010 ADA Standards. These barriers have prevented Mr. Cuesta from accessing these elements within the hotel; their remediation is both technically feasible and readily achievable.

**Lobby/Common Area Restrooms**

**i.** The restrooms located within the lobby area are not ADA compliant. The barriers to access within these restrooms include improperly mounted dispensers, improperly mounted flush controls, and improper door hardware; violations of the ADAAG and Sections 308 and 601 of the 2010 ADA Standards. Mr. Cuesta could not freely access these elements within restroom without assistance. The remediation of these barriers is both technically feasible and readily achievable.

**Accessible Guestroom/Suite**

**j.** Mr. Cuesta could not make use of the restroom doors within the guestroom (due to a lack of latch-side clearance) without assistance, a violation of the ADAAG Sections 4.13.9 and 9.2.2(3) and Sections 404 of the 2010 ADA Standards. Due to this barrier, he could potentially become trapped inside of his room. The remediation of this barrier is both technically feasible and readily achievable.

**k.** The maneuvering space around the beds/mattresses within the guestroom is inadequate and prevented Mr. Cuesta from freely transferring from his wheelchair into either bed without

assistance; this violates the ADAAG and Sections 305 and 806.2.3 of the 2010 ADA Standards. The remediation of this barrier is both technically feasible and readily achievable.

**l.**   The restroom located within the designated accessible guestroom contained improperly designed roll-in shower (the shower is too small in length and width) with an improperly mounted spray unit and controls, improper grab bars, and improper seat; violations of the ADAAG and Sections 309, 608, 609, and 610 of the 2010 ADA Standards. Mr. Cuesta could not properly bathe due to improperly located shower controls, as they are mounted well beyond his reach, while the other violations hindered him from doing so comfortably - even with assistance. The remediation of these barriers is both technically feasible and readily achievable.

**m.**   The toilet within the guestroom restroom contains improperly mounted grab bars, an improper centerline, a lack clear floor space, and a flush control which is mounted on the wall-side; in violation of the ADAAG and Section 604 of the 2010 ADA Standards. Mr. Cuesta could not use the toilet safely/comfortably without assistance. The remediation of these barriers is both technically feasible and readily achievable.

**n.**   Mr. Cuesta could not make use of the mirror within the guestroom bathroom at the Property due to its improper height, a violation of the ADAAG and Section 306 of the 2010 ADA Standards. The remediation of this barrier is both technically feasible and readily achievable.

**o.**   The guestroom contained elements that were inaccessible to Mr. Cuesta. These include the drapery wands, HVAC controls, towel racks, closet/storage areas, and the iron; violations of the ADAAG and Sections 225.2 and 806.2 of the 2010 ADA Standards. Mr. Cuesta was unable to freely make use of these amenities. The remediation of these barriers is both technically feasible and readily achievable.

25. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[5]

26. The discriminatory violations described in paragraph 24 may not be an exhaustive list of the ADA violations that exist at Towneplace, but they are the result of a preliminary inspection conducted by the Plaintiffs and include all those personally experienced by Mr. Cuesta. Plaintiffs require thorough inspection of the Defendant's place of public accommodation in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA.

27. Plaintiffs, and all other similarly situated disabled persons, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

28. Defendant has discriminated against Plaintiffs, and all other similarly situated disabled persons, by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

29. Defendant continues to discriminate against Plaintiffs, and all other similarly situated

---

[5] 28 CFR § 36.104

disabled persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[6]

30.     Defendant continues to discriminate against Plaintiffs, and all other similarly situated disabled persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[7]

31.     Defendant continues to discriminate against Plaintiffs, and all other similarly situated disabled persons, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[8]

32.     If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[9] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

33.     Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Cuesta, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[10] Discovery in this matter will reveal if and when such alterations have taken place at the Property,

---

[6] 42 U.S.C. § 12181(b)(2)(A)(iv)

[7] 42 U.S.C. § 12181(b)(2)(A)(ii)

[8] 42 U.S.C. § 12181(b)(2)(A)(iii)

[9] as defined by 28 CFR § 36.401(a)(2)

[10] 28 CFR § 36.402(a)(2)

and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Property into compliance with the ADA.

34. Pursuant to 28 CFR § 36.304(a) Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

35. 28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element - that has not been altered - must comply with or be modified to meet. Those are defined as follows:

36. Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

37. Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with either the 1991 Standards or the 2010 Standards.

38. Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with the 2010 Standards.

39. Plaintiffs are not required to notify Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiffs have found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In their experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

40. Plaintiffs are without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation.

Considering the balance of hardships between the Plaintiffs and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

41. Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiffs are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

42. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiffs injunctive relief, including an order to require the Defendant to alter Towneplace and make the Property readily accessible and useable to the Plaintiffs and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendant cure their violations of the ADA.[11]

**WHEREFORE,** Plaintiffs respectfully demand;

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to (1) cure all ADA violations existing at the Property listed herein and those later found through discovery within the next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property - as required by the ADA.

---

[11] 42 U.S.C. § 12188(b)(2)

    d.  An award of attorney's fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205.

    e.  Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

Respectfully submitted on this 6th day of February 2023,

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
717 E. Elmer Street, Suite 7
Vineland, NJ 08360
Direct (609) 319-5399
Office (609) 236-3211
Fax (609) 900-2760
js@shadingerlaw.com
*Attorney for Plaintiffs*
